UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Basra Abubakar Jibril,

        Petitioner,

v.                                                      Civil No. 06-600 (JNE/JJG)
                                                                ORDER

U.S. Citizenship and Immigration
Services, Department of Homeland Security,
and Michael B. Mukasey,[1] U.S. Attorney
General,

        Respondents.

Petitioner Basra Abubakar Jibril, a native of Ethiopia, brings this action to contest denial of his application for naturalization. The United States Citizenship and Immigration Services (USCIS) determined that, during the application process, Jibril gave false testimony about a 2002 arrest, and USCIS concluded that this false testimony precluded a finding that Jibril possessed good moral character. Jibril filed an administrative appeal, and USCIS affirmed denial of the application. Jibril petitioned the Court to review USCIS's decision. *See* 8 U.S.C. § 1421(c) (2000). The case is before the Court on Respondents' motion for summary judgment. For the reasons stated below, the Court grants Respondents' motion.

When an application for naturalization is denied by USCIS, the applicant may seek de novo review by a district court under 8 U.S.C. § 1421(c). The applicant bears the burden of establishing by a preponderance of the evidence that he or she has met all the requirements for naturalization. 8 C.F.R. §§ 316.10(a)(1), .2(b) (2007). An applicant for naturalization must demonstrate, among other things, that he or she "has been and still is a person of good moral

---

[1] On November 9, 2007, Michael B. Mukasey became the Attorney General, and, pursuant to Rule 25(d), Federal Rules of Civil Procedure, the Court has substituted him as a named defendant.

1

character." 8 U.S.C. § 1427(a)(3) (2000); *see also* 8 C.F.R. §§ 316.10(a)(2), .2(a)(7). An applicant shall not be found to be a person of good moral character if he or she "has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6) (2000). It is immaterial whether the false testimony is given to hide a fact that would actually disqualify the applicant from naturalization, so the subject matter of the false testimony is irrelevant. *See* 8 C.F.R. § 316.10(b)(2)(vi). However, before false testimony will disqualify an applicant, the false testimony must be given with the subjective intent to obtain immigration benefits. *Kungys v. United States*, 485 U.S. 759, 780-81 (1988). Accordingly, neither accidental falsehoods nor willful misrepresentations for reasons other than obtaining immigration benefits are sufficient to foreclose a finding of good moral character. *See id.* Because Jibril is unable to demonstrate that false testimony regarding his 2002 arrest was not given to obtain immigration benefits, the Court concludes that Jibril is unable to meet his burden of establishing the good moral character required to qualify for naturalization.

Jibril concedes that he was arrested on suspicion of robbery on July 20, 2002. It is uncontroverted that Jibril was handcuffed, placed in the back of a police car, fingerprinted, issued jail clothes, and jailed overnight. Though both the victim and multiple witnesses identified Jibril as the assailant, Jibril was released when the robbery victim could not later be located. Jibril was never charged or prosecuted, and he has denied any involvement in the robbery.

In 2004, Jibril submitted his application for naturalization. Although he certified under penalty of perjury that his representations in the application were true and correct, Jibril indicated that he had never been arrested or detained by a law enforcement officer for any

reason. He also indicated that he had never been in jail. Jibril subsequently testified under oath about these answers on three different occasions.

On March 9, 2005, after being placed under oath, Jibril was interviewed by a USCIS official. In this interview, Jibril initially stated that he had never been arrested or detained by a law enforcement officer for any reason, and he stated that he had never been in jail. The interviewer inquired about these matters again, and Jibril repeated his answers. The interviewer also asked if Jibril had ever been fingerprinted by the police, if he had ever been in a police car, and if he had ever had problems with the police. Jibril answered all of these questions in the negative. When the interviewer revealed that she knew of Jibril's 2002 arrest, Jibril admitted that he had been arrested and fingerprinted but asserted that the arrest was a mistake. When asked why he had answered questions falsely, Jibril said, "My English." However, he then admitted to having understood the questions and said, "Maybe I forgot I was arrested and fingerprinted." According to the interviewer, Jibril had not indicated that he did not understand the questions or that he was having trouble communicating in English at any time earlier in the interview. In a letter dated April 27, 2005, USCIS denied Jibril's application for naturalization, indicating that his false testimony precluded a finding that he was a person of good moral character.

Jibril filed an administrative appeal, and he was interviewed under oath by a different USCIS officer on September 13, 2005. In this interview, Jibril asserted that his previous false answers were attributable to cultural differences though, according to the interviewer, Jibril did not explain how his cultural background caused him to answer as he did. Jibril further stated that unidentified other people had informed him that he need not disclose his arrest because it had been a mistake. USCIS denied Jibril's appeal on October 20, 2005.

Jibril then petitioned this Court for review of the denial of his application for naturalization, and he was deposed on June 20, 2007. In his deposition, Jibril explained that, due to his poor English language skills and his assumptions about similarities between Ethiopian legal systems and the U.S. legal system, he believed that his innocence and the fact that he had never been charged meant that he had not been arrested, detained, or jailed. He claimed that he did not understand what it means to be fingerprinted. He also explained that one or more individuals, whose identities he could not recall, had told him he did not need to report the 2002 incident because he had not been charged. Jibril denied that he was embarrassed or that he considered his arrest to be a private matter, and he explained that he had forgotten the incident because he deemed it to be unimportant when nothing further came of it.

Jibril does not now dispute the fact that he gave false information in his application or in his initial interview. Instead, in his memorandum opposing Respondents' motion for summary judgment, he contends that the false statements were not made for the purpose of obtaining immigration benefits, and he offers a variety of alternative explanations for those statements.

First, contrary to his deposition testimony disclaiming embarrassment as an explanation for his false answers, Jibril asserts that he failed to reveal the arrest because he was embarrassed about it. Despite earlier opportunities, Jibril first offered this explanation in response to Respondents' summary judgment motion.

Second, and inconsistent with his explanations related to embarrassment and poor memory, Jibril asserts that he accidentally gave false answers due to confusion over legal terminology. In his initial interview, Jibril neglected to mention any comprehension issues until after the interviewer revealed that she knew of his 2002 arrest. Although in his deposition he stated that he did not understand the meaning of the words "arrested," "detained," "in jail," and

4

even "fingerprinted," Jibril has not explained why he denied both having been in a police car and having had a problem with the police more generally.

Third, Jibril claims that he made the statements because friends told him it was unnecessary to disclose his arrest. Although he has previously stated that he had forgotten about the arrest, Jibril admits that he discussed the incident with others before submitting his application for naturalization. Jibril's assertion that he relied on the advice of unknown individuals was not made until his second interview with USCIS.

Finally, Jibril argues that he lacked any incentive to testify falsely about his arrest, and he claims this indicates that his false statements were not made for the purpose of obtaining immigration benefits. Specifically, he claims he knew that revealing his arrest, in the absence of a conviction or criminal charges, would not have disqualified him from naturalization. By implication, Jibril contends that he understood the difference between an arrest and a criminal charge or conviction even though he disclaimed knowledge of these distinctions during his deposition when discussing his unfamiliarity with the U.S. legal system.

Taken as a whole, Jibril's explanations for his false testimony have been evolving and inconsistent and are ultimately unconvincing. Given his initial false answers and the deficiencies in his explanations, no genuine issue of material fact remains regarding whether Jibril has given false testimony to improve his prospects for naturalization. *See* Fed. R. Civ. P. 56(c). Accordingly, the Court is satisfied that no reasonable fact finder could conclude that Jibril can meet his burden of establishing that he has met the requirements for naturalization. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[2]

---

[2] Respondents also argue that this action should be dismissed because Jibril failed to serve the Attorney General as required by 8 C.F.R. § 336.9(b) (2007). Counsel for Jibril contends that

5

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Respondents' Amended Motion for Summary Judgment [Docket No. 16] is GRANTED.

2. Jibril's Petition for De Novo Review of Naturalization Application Pursuant to 8 C.F.R. § 336.9 [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 19, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

the Attorney General was properly served.  On this record, the Court accepts counsel's representation that the Attorney General was properly served.